J-S74014-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AARON MCCALLUM | : | |
| | : | |
| Appellant | : | No. 322 EDA 2018 |

Appeal from the PCRA Order December 15, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0009154-2011

BEFORE:  LAZARUS, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY LAZARUS, J.:                **FILED DECEMBER 14, 2018**

Aaron McCallum appeals *pro se* from the order dismissing his Post Conviction Relief Act (PCRA)[1] petition without a hearing.   After careful review, we affirm.

On March 28, 2012, a jury convicted McCallum of second-degree murder,[2] two counts of robbery,[3] criminal conspiracy to commit robbery,[4] carrying firearms in public in Philadelphia,[5] and possessing instruments of

---

[1] 42 Pa.C.S. §9541-9546.

[2] 18 Pa.C.S. § 2502(b).

[3] 18 Pa.C.S. § 3701.

[4] 18 Pa.C.S. § 903.

[5] 18 Pa.C.S. § 6108.

crime (PIC).[6]    The convictions stemmed from an incident that arose on

Beaumont Avenue in Philadelphia on January 23, 2010, when McCallum and

an accomplice robbed two victims at gunpoint.    One of the victims sustained

a fatal gunshot to the back of the head.

The trial court summarized the relevant facts as follows:

Police Officer Eric Riddick testified that on January 23, 2010, at
approximately 10:00 P.M., he and his partner responded to a
report of gunshots on the 5500 block of Beaumont Street in
Philadelphia.    He saw two women, later identified as Diane
Steward and Co-Defendant Shande Steward, exit 5537 Beaumont
Street and walk towards his patrol car.  Co-Defendant Stewart told
Officer Riddick that an incident had occurred on the block.    Officer
Riddick got out of his patrol car to inspect the area.    He saw a
male, later identified as Phillippe Koukoui, lying face-down with a
gunshot wound to the back of his head and to the back part of his
neck in a vacant lot at 5527 Beaumont Street.    Officer Riddick
went through the backpack that had been removed from Koukoui,
hereinafter referred to as the decedent, and recovered a Comcast
bill addressed to the decedent, a scale, a cell phone, Ziploc
baggies, and[] a small amount of marijuana.    He crossed the
street to a smaller vacant lot at 5531 Beaumont Street and
recovered three shell casings.    Officer Riddick then entered an
alleyway that ran behind Beaumont and Litchfield Streets and
recovered a black patent leather Nike sneaker.

While at the scene, Officer Riddick was approached by a male who
identified himself as James Henderson.    Henderson told Officer
Riddick that he had been the victim of a robbery and that he had
been with the decedent and Co-Defendant Stewart.    Henderson
was transported to the Homicide Unit to be interviewed.

Henderson testified [at trial] that the decedent had been his friend
for five (5) to six (6) years.  On January 23, 2010, he went with
the decedent to the 5500 block of Beaumont to visit Co-Defendant
Stewart, whom the decedent knew, and to smoke marijuana.    The

---

[6] 18 Pa.C.S. § 907.

decedent and Henderson went into Co-Defendant Stewart's house and stayed for approximately ten (10) minutes. The decedent, Henderson and Co-Defendant Stewart then left the house to walk to a nearby store. They walked down Beaumont Street towards 55th Street. Henderson was walking in the street, ahead of the decedent and Co-Defendant Stewart, talking on his cell phone. A male pointing a gun jumped out at Henderson, grabbed him, and started going through his pockets. Henderson looked back toward where the decedent and Co-Defendant Stewart were walking and saw that another male had grabbed the decedent and had a gun pointed at him. The male that was holding Henderson told him to turn around, not to look back, and to run through an alleyway towards 56th Street. He heard Co-Defendant Stewart say, "Oh my God, what's going on[."] As he was running through the alley, he heard gunshots and his sneaker came off his foot. When he reached the end of the alley, he heard more gunshots. He went to his house, put on another pair of sneakers and then walked back to the scene. He saw the police and told them that he and his friend were just robbed.

Henderson gave a statement wherein he described the male that pointed the gun at him and robbed him as a boy, about 17 or 18 years old, approximately 5'6" tall, skinny, light skinned, wearing a tan snap cap with a brim that was pulled down to his eyes and a black hoodie. In his statement[,] Henderson indicated that the gun that was pointed at him was silver, but he did not know if it was a revolver or an automatic. At trial, he testified that he did not remember giving those answers.

Co-Defendant Stewart testified that she knew the decedent from buying marijuana from him. She knew his cell phone number and had stored his number in her cell phone. On January 23, 2010, she called the decedent to buy five (5) bags of marijuana for $20.00. The decedent came to her house at 5537 Beaumont Street with Henderson approximately ten (10) minutes later.

Co-Defendant Stewart further testified that before she called the decedent, Co-Defendant Cannon was in her house and she had a conversation with him about robbing the decedent. She heard Co-Defendant Cannon make a telephone call after which the [McCallum], aka "Bean[,"] came to her house. While sitting in the living room of her house, she talked about robbing the decedent with [McCallum] and Co-Defendant Cannon. [McCallum] and Co-Defendant Cannon told her to call the decedent and tell him that she wanted five (5) for $10.00. [McCallum] and Co-Defendant

Cannon told her that they were going to be in the basement of her house and they were going to leave the house from the back door in the basement to rob the decedent. The decedent called and told her he was outside of her house. She let the decedent and Henderson into the house. The decedent told her he was not going to sell her the marijuana for the price she asked. She left the house with the decedent and Henderson through the front door of her house and walked down Beaumont Street towards 55th Street. She then saw Co-Defendant Cannon come out of a vacant lot located at 5527 Beaumont Street. [McCallum] came out of from a lot on other side of the street. Co-Defendant Cannon was holding a gun and grabbed the decedent by his shirt. She ran towards her house. Henderson started running and [McCallum] shot at him. As she ran inside her house, she heard more gunshots. She ran down to the basement where she saw [McCallum] and Co-Defendant Cannon. She heard Co-Defendant Cannon say, "I think the boy is dead[."] She ran upstairs and told her mother that . . . the boys she was with were robbed. She then went outside with her mother and saw a police car coming down the street. She told the police that she had heard gunshots. She was transported to Homicide for investigation.

At the Homicide Division, Co-Defendant Stewart, told the detectives about the robbery and [McCallum's] and Co-Defendant Cannon's involvement. She consented to a search of her cell phone. Stored in her cell phone were Co-Defendant Cannon's and [Mccallum's] cell phone numbers. She stored [McCallum's] number under the name "BF" for boyfriend. She was then taken into custody.

On April 27, 2011, Co-Defendant Stewart entered into a Memorandum of Agreement with the District Attorney's Office wherein she would plead guilty to two (2) counts of robbery and conspiracy and the murder charge would be *nolle prossed*. At the time of trial, she had not yet been sentenced.

Detective Timothy Bass testified that based on information received from Co-Defendant Stewart, he went to 5537 Beaumont Street and transported Co-Defendant Cannon to the Homicide Division. Detective Bass took a statement from Co-Defendant Cannon. In his statement, he told Detective Bass in summary: that he did not know the decedent or Henderson; that he and [McCallum] talked about robbing the two (2) men; that Co-Defendant Stewart called him and told him that the two (2) males they were going to rob did not carry guns; and, that he knew

[McCallum] probably had a gun. He indicated further that: he was in the house with Co-Defendant Stewart and [McCallum] when the decedent and Henderson came to Co-Defendant Stewart's house. He followed one of the two men outside; grabbed him; and, started fighting with him. He got two (2) cigarettes from the male he robbed. He saw that the other male had a backpack and saw that male try to run away from [McCallum] who was standing at the end of the lot. He heard four (4) to five (5) gunshots. After the incident, [McCallum] called him and asked him if anyone was shot; he told the Defendant that somebody was dead. [McCallum] told him that he was going on the run.

Detective Bass testified that the cell phones of Co-Defendant Stewart, Co-Defendant Cannon and the decedent were recovered. [McCallum] was arrested on June 22, 2011.

Corey Williams testified that knew [McCallum] for more than ten (10) years. On January 23, 2010, he was with [McCallum] when [McCallum] received a phone call from "Star[,"] who Williams later identified as Co-Defendant Stewart. [McCallum] told him that he was going to walk to Co-Defendant Stewart's house to do a "mission[."] [McCallum] was gone for approximately twenty (20) minutes. When [McCallum] returned, he admitted to Williams what had occurred and that somebody was killed.

Williams testified that he had seen [McCallum] with guns on multiple occasions and that the last gun he saw [McCallum] with was a chrome and black semi-automatic.

Dr. Gulino, Chief Medical Examiner for the City of Philadelphia, testified that the decedent had suffered three (3) gunshot wounds: one gunshot wound entered the back of the decedent's head on the left side; the second gunshot wound was a through [-]and[-] through to the decedent's right arm which fractured the humerus; the third gunshot wound was a graze wound along the back of the decedent's neck. Dr. Gu[]lino opined that the decedent died as a result of a gunshot wound to the head and the manner of death was homicide.

Dr. Gulino testified that hypothetically, the gunshot wound to the back of the decedent's head was consistent with the decedent being in a squatting position and the shooter standing behind the decedent, pointing the gun down towards the back of the decedent's head; and, that the graze wound to the decedent's

neck was consistent with his head being forward and pointed at the ground.

Detective Christopher Tankelewicz testified that he is the director of the Philadelphia District Attorney's Office Technical Services Unit; and, that his unit handles computer forensics, cell phone forensics, audio and video forensics. Detective Tankelewicz testified that he extracted information from Co-Defendant Stewart's cell phone on February 7, 2011. That information showed that on January 23, 2010, at 9:54:21 P.M., Co-Defendant Stewart texted [McCallum], whose number she stored in her cell phone as "BF", a message that read, "They about to come out[."]

Officer Gregory Welsh, assigned to the Firearms Identification Unit testified that the three (3) 9 mm [L]uger[-]fired cartridge casings recovered from the scene were fired from the same firearm. He testified that he also examined the bullets that were turned over by the Medical Examiner's Office. One (1) of the bullets recovered was from the base of the decedent's skull; the other bullet was found mixed in with the decedent's clothing. He testified that it was possible that the three (3) fired cartridge casings and the two (2) bullets were fired by the same gun.

PCRA Court Opinion, 4/3/13, at 4-9 (internal citations to certified record and footnotes omitted).

Immediately following his trial, the trial court sentenced McCallum to life imprisonment.[7] *See* 18 Pa.C.S. § 1102(b). McCallum filed post-sentence motions that were denied without a hearing on April 30, 2012. He filed a timely direct appeal; on appeal, our Court vacated the sentence on one robbery count, finding that it should have merged with his murder sentence, and affirmed his judgment of sentence in all other respects. *Commonwealth v. McCallum*, No. 1464 EDA 2012 (Pa. Super. filed June 9, 2014)

---

[7] McCallum also received concurrent sentences of 10 to 20 years in prison for each robbery conviction, 10 to 20 years' incarceration for his criminal conspiracy (robbery) conviction, 2½ to 5 years in prison for the firearms offense, and 2½ to 5 years' incarceration for his PIC conviction.

(unpublished memorandum decision). On December 3, 2014, the Pennsylvania Supreme Court denied McCallum's petition for allowance of appeal.

On November 9, 2015, McCallum filed a *pro se* PCRA petition. Counsel was appointed in May 2016. On October 6, 2016, counsel filed a **Turner**/**Finley** "no-merit" letter seeking to withdraw. The trial court accepted counsel's "no-merit" letter and sent McCallum notice of its intent to dismiss his petition pursuant to Pa.R.Crim.P. 907. McCallum filed a response to the trial court's Rule 907 notice, requesting the appointment of new counsel. The trial court removed original PCRA counsel and granted McCallum's request for new PCRA counsel, appointing Gary Server, Esquire, on March 9, 2017. On October 1, 2017, Attorney Server filed a **Turner**/**Finley** "no-merit" letter seeking to withdraw from representation.[8] On November 15, 2017, the trial court sent out another Rule 907 notice of its intent to dismiss McCallum's petition. McCallum did not respond. On December 11, 2017, the court

_____

[8] McCallum claims that Attorney Server never "conducted any communication" with him "in reference to his *pro se* . . . claims or any other potential claims for that matter." Appellant's Brief, at 14-15. The record, however, belies this assertion. There is a copy of Attorney Server's **Finley** letter mailed to McCallum on September 28, 2017, indicating that he could not find any meritorious issues to argue on his behalf, that he was enclosing a copy of the letter and motion he filed with the trial court detailing his review of the matter leading to his conclusion that the appeal has no merit, and seeking to withdraw from representation. Attorney Server's letter advises him of his right to proceed *pro se* or hire a private attorney and details his right to appeal should the trial court dismiss his petition.

dismissed McCullum's petition without a hearing and granted counsel's withdrawal request.

McCullum filed a timely *pro se* notice of appeal[9] and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. On appeal, McCallum presents the following issues for our review:

(1) Whether the PCRA court abused its discretion in accepting the **Turner**/**Finley** no-merit letters filed by counsel and dismissing the PCRA [petition] when those letters did not meet the standards set forth in **Commonwealth v. Mosteller**, 633 A.2d 615 [(Pa. Super. 1993)], specifically in reference to the following claims:

A. [McCallum's] culpability for second[-]degree murder was premised on co-conspirator liability as a member of conspiracy to commit robbery:

B. Prosecutorial misconduct;

C. [McCallum] was not arraigned or formally charged;

D. The trial court lacked subject matter jurisdiction;

E. [McCallum] was provided with ineffective assistance of counsel during his trial for stipulating to medical examiner's report at the preliminary hearing;

F. [McCallum's] due process rights were violated;

G. The trial judge engaged in judicial misconduct;

H. Improper obstruction by government officials of [McCallum's] right to appeal;

I. The imposition of a sentence greater than the lawful maximum;

---

[9] On May 31, 2018 the court reporter was directed to forward the notes of testimony from McCallum's case to him in prison at SCI-Dallas. McCallum's appellate brief was due to be filed in this court almost two months later, on July 30, 2018.

(2) Whether initial PCRA counsel rendered ineffective assistance of counsel by filing a *Turner*/*Finley* no merit letter concluding that there was no merit to any claims contained in [McCallum's] PCRA.[10]

(3) Whether subsequent PCRA counsel rendered ineffective assistance of counsel based on the filing of a *Turner*/*Finley* no[-]merit letter concluding that there was no merit to any claims contained in [McCallum's] PCRA.

(4) Whether the PCRA court erred in dismissing [McCallum's] PCRA [petition] without an evidentiary hearing where [McCallum] raised substantial questions of disputed facts.

Appellant's Brief, at 4-5.

The standard of review of an order denying a PCRA petition is whether that determination is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. *Commonwealth v. Johnston*, 42 A.3d 1120, 1126 (Pa. Super. 2012).

McCallum's first two issues regarding the sufficiency of the evidence to convict him of second-degree murder based on co-conspirator liability and the claim of prosecutorial misconduct are previously litigated under the PCRA as they have been previously addressed by this Court on direct appeal. *See* 42 Pa.C.S. § 9544(a)(2) (issue has been previously litigated under PCRA if highest appellate court in which petitioner could have had review as matter of right has ruled on merits of issue).

_____

[10] We remind McCallum that original PCRA counsel was removed from the case. Thus, we confine our review to whether subsequent PCRA counsel, Attorney Server, was ineffective and whether he correctly determined that McCallum's claims were meritless under *Turner*/*Finley*.

McCallum next asserts that he was not arraigned or formally charged. The record belies this claim. The certified record includes a copy of the bill of information formally charging McCallum with robbery, murder, conspiracy, PIC and various firearm offenses.

A portion of McCallum's claim that PCRA counsel was ineffective includes the assertion that counsel should have raised the issue regarding whether his life sentence without the possibility of parole was illegal because it is a flat sentence that sets no minimum sentence in contravention of 42 Pa.C.S.A. § 9756. However, in **Commonwealth v. Lewis**, 718 A.2d 1262 (Pa. Super. 1998), our Court considered the same issue and determined that the defendant's "sentence of life imprisonment was nothing other than a mandatory minimum sentence which did not violate [section] 9756." **Id.** at 1265. Thus, this claim is meritless.

The remainder of McCallum's allegations of PCRA counsel's ineffectiveness amount to nothing more than boilerplate assertions that include no meaningful argument to develop the claims. **Commonwealth v. Paddy**, 15 A.3d 431 (Pa. 2011). Thus, we find these claims waived.

Finally, McCallum claims that his sentence is illegal and that the trial court lack subject-matter jurisdiction over his case. We find no merit to these issues. **See** 18 Pa.C.S. § 1102(b) (legal sentence for second-degree murder is life imprisonment); **see also Commonwealth v. Elia**, 83 A.2d 254 (Pa. Super. 2013) (controversies stemming from Crimes Code violations entrusted to original jurisdiction of courts of common pleas), citing **Commonwealth v.**

***Bethea***, 828 A.2d at 1074 (Pa. 2003); 42 Pa.C.S. § 931(a) (original jurisdiction and venue vested in courts of common pleas).

Having determined that there are no genuine issues of material fact relating to any claims raised by McCallum in his PCRA petition, the trial judge correctly disposed of the petition without a hearing. Pa.R.Crim.P. 907(a).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/14/18